1
2
3
4
5
6
7 UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA
8
9

| CRYSTAL MITCHELL, | Case No. 1:23-cv-00060-JLT-EPG |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING (1) GRANTING PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE AND (2) GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION |
| v. | |
| UNITED HEALTH CENTERS OF THE SAN JOAQUIN VALLEY, *a Colorado corporation*, | (ECF Nos. 46, 54). |
| Defendant. | OBJECTIONS DUE WITHIN THIRTY (30) DAYS |

Plaintiff Crystal Mitchell ("Plaintiff") is a former hourly, non-exempt employee of Defendant United Health Centers of the San Joaquin Valley ("Defendant" and "UHSJ") who worked as a staff accountant at Defendant's facility. Plaintiff alleges that Defendant violated state labor laws by failing to include bonus calculations into the rate of pay for paid time off ("PTO"). Plaintiff further alleges that Defendant did not pay out all unpaid PTO to former employees upon separation.

Plaintiff requests that the Court take judicial notice of the Register of Actions from consolidated state court case against Defendant, *Moreno v. United Health Centers of the San Joaquin Valley,* Fresno County Superior Court No. 22CECG01601.3 (the "State Court Action"). Plaintiff also seeks class certification of one proposed class and one sub-class based on Plaintiff's

1

failure to pay PTO with the bonus calculation, and failure to pay out all unpaid PTO to former employees upon their separation.

For the following reasons, the Court recommends that Plaintiff's request for judicial notice and Plaintiff's motion for class certification both be granted.[1]

## I. PROCEDURAL BACKGROUND

On January 11, 2023, Plaintiff initiated this action by filing a class action complaint in the United States District Court for the Eastern District of California. (ECF No. 1). Plaintiff filed her First Amended Complaint on March 3, 2023. (ECF Nos. 6).

On December 23, 2024, Plaintiff filed a motion for class certification. (ECF No. 46). Defendant filed an opposition to Plaintiff's motion for class certification on January 31, 2025.[2] (ECF No. 50). On February 10, 2025, Plaintiff filed a reply to Defendant's opposition. (ECF No. 53). That same day, Plaintiff also filed a request that the Court take judicial notice of the "Register of Actions from consolidated case *Moreno v. United Health Centers of the San Joaquin Valley*, Superior Court of California, County of Fresno Case No. 22CECG01601." (ECF No. 54 at 2).

The Court held a hearing on the motion for class certification on February 28, 2025. (ECF No. 55).

## II. PLAINTIFF'S FIRST AMENDED COMPLAINT

In Plaintiff's First Amended Complaint (ECF No. 6), Plaintiff alleges she was an hourly, non-exempt employee of Defendant from about March 2, 2015, to October 20, 2022. (*Id.* at 3, 8). Plaintiff's amended complaint pleads both individual and class claims against Defendant for violations of the California Labor Code, Fair Labor Standards Act, IWC Wage Orders, and California Business and Professions Code. (*Id.* at 1, 11-18).

Plaintiff alleges that during her employment with Defendant she was not paid for every hour she worked because Defendant used an impermissible but uniform policy and practice of rounding its employees' time to the nearest quarter hour. (*Id.* at 3). Plaintiff says this practice often resulted in her not being paid for all the time she worked and not being paid all her

---

[1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A) and District Judge Jennifer L. Thurston's Standing Order in Civil Cases. (*See* ECF No. 18 at 3).
[2] Defendant was granted an extension to file its opposition until January 31, 2025. (ECF No. 49).

overtime. (*Id.*). Plaintiff alleges that Defendant also failed to include commissions, non-discretionary bonuses and other items of compensation (including shift premiums and differentials) when determining all the non-exempt California employees' regular rate of pay for purposes of determining overtime. (*Id.* at 5).

Plaintiff further alleges that she and Defendant's other non-exempt California employees were also entitled to sick pay. (*Id.*). However, any sick pay used appeared on employees' wage statements as "PTOU", which constituted unscheduled PTO. (*Id.*). Plaintiff alleges that Defendant failed to include commissions, non-discretionary bonuses and other items of compensation (including shift premiums and differentials) when determining Plaintiff's and Defendant's other non-exempt California employees' regular rate of pay for purposes of sick pay. (*Id.* at 5).

Additionally, Plaintiff alleges that she was entitled to meal breaks in accordance with California law, but was not always authorized or permitted to take compliant meal breaks. (*Id.* at 6). Specifically, throughout her employment Plaintiff sometimes worked shifts in excess of ten (10) hours. (*Id.*). Plaintiff says Defendant did not afford Plaintiff the opportunity for a second meal period during any eligible shift during her employment. (*Id.*). Plaintiff says that Defendant also often required her to work during meal breaks due to understaffing issues. (*Id.*). Furthermore, when not afforded meal breaks, Plaintiff says Defendant did not pay Plaintiff premiums as required by California law.[3] (*Id.*).

Plaintiff further alleges that wage statements issued by Defendant failed to accurately show:

a. The gross wages earned, in violation of section 226(a)(1);
b. The total hours worked by the employee in violation of section 226(a)(2);
c. The net wages earned, in violation of section 226(a)(5); and
d. All applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate in violation of section 226(a)(9).

(*Id.* at 7).

Plaintiff's first cause of action alleges that, during the relevant time period, Defendant intentionally and willfully failed to pay Plaintiff at least minimum wage for all time worked, in

---

[3] Plaintiff also alleges that because Defendant failed to pay the required premiums, this also affected her bonus earnings and other non-discretionary pay. (ECF No. 6 at 6).

violation of California Labor Code section 1182 et seq. (*Id.* at 12-13).

Plaintiff's second cause of action alleges that Defendants intentionally and willfully failed to pay all overtime wages due to Plaintiff in violation of the Fair Labor Standards Act and California Labor Code §§ 510 & 1198. (*Id.* at 13).

Plaintiff's third cause of action alleges that during the relevant time period, she was not provided with compliant meal breaks, nor did she receive an additional hour of premium pay for each missed meal break at the required regular rate of compensation in Violation of Labor Code §§ 226.7, 512 And IWC Wage Orders. (*Id.* at 14-15).

Plaintiff's fourth cause of action alleges that Defendant failed to furnish accurate itemized wage statements in violation of Labor Code § 226(a). (*Id.* at 15).

Plaintiff's fifth cause of action, asserted on behalf of Plaintiff and the "Sick Pay Class" (also referred to as "Underpaid PTO Class"), alleges that Defendant engaged in unfair business practice in violation of California Business and Professions Code §§ 17200 *et seq.* by failing to properly calculate and pay redeemed sick pay. (*Id.* at 16-17).

Plaintiff's sixth cause of action, asserted on behalf of Plaintiff and the "Former-Employee Sub-Class" alleges that Defendant engaged in unfair business practices by failing to pay all wages owed to employees upon cessation of employment in violation of Labor Code § 201. (*Id.* at 17-18).

Lastly, the amended complaint addresses class certification requirements under Federal Rule of Civil Procedure 23(a). (*Id.* at 9). The amended complaint contends that the members of each class are so numerous that joinder is impracticable; that class members can be ascertained using Defendant's own records; that Plaintiff and Plaintiff's counsel are adequate representatives for each of the proposed classes; that "common questions of fact and law predominate over any questions affecting only individual members of the class" regarding Defendant's policies and practices; and that Plaintiff's claims are typical of the proposed classes because Plaintiff was subject to the same policies and practices. (*Id.* at 9-10).

III.    **DEFENDANT'S MOTION TO DISMISS**

Although not directly at issue, the Court's ruling on Defendant's Motion to Dismiss provides some relevant background for the present motion.

On April 10, 2023, Defendant filed a motion to dismiss and supporting memorandum, arguing that Plaintiff's Fifth and Sixth Causes of Action, the class action causes, should be dismissed, or stayed in the alternative, "pursuant to the *Colorado River* doctrine and Federal Rule of Civil Procedure, Rule 12(b)(1), Rule 12(b)(3) and/or 12(b)(6) and based on the grounds that there are currently three state class actions involving the same allegations." (ECF Nos. 9 at 1-2). Specifically, Defendant argued that under the *Colorado River* Doctrine, the Fifth and Sixth Causes of Action should be dismissed because the pending state court class action cases— *Moreno, Torres*, and *Mora*—addressed parallel issues. (ECF No. 10 at 13). Defendant argued that the *Colorado River* Doctrine factors supported dismissal and concluded that Mitchell's class causes of action were redundant and already being asserted against it in multiple state court actions. (*Id.* at 15).

On January 26, 2024, United States District Judge Jennifer L. Thurston denied the motion. (*Id.*). Judge Thurston explained that "[t]he Ninth Circuit held that a partial stay of the federal action as to the state claims was inappropriate because 'a *Colorado River* stay should be implemented only when the state proceeding *will resolve all of the parties' claims*.'" (*Id.* at 4.) Judge Thurston pointed out that "Defendant does argue, nor could it, that the requested stay will resolve all the claims in this case." (*Id.*). Judge Thurston also stated that "[u]pon learning of the state court action, Plaintiff took prompt steps to narrow the scope of her class claims to include only claims premised upon the failure to compensate employees properly for sick leave. This conduct is not clearly suggestive of forum shopping." (*Id.* at 6).

## IV.     REQUEST FOR JUDICAL NOTICE

In its reply, Plaintiff asks that the Court take judicial notice of the Register of Actions from the consolidated case against Defendant, *Moreno v. United Health Centers of the San Joaquin Valley,* Superior Court of California, County of Fresno Case No. 22CECG01601 ("the State Court Action"). (ECF No. 54).

"The Court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Courts "may take judicial notice of court filings and other matters of public

record." *Reyn's Pasta Bella, LLC v. Visa USA*, *Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006). "But a court cannot take judicial notice of disputed facts contained in such public records." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001)). "Just because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth." *Khoja*, 899 F.3d at 999.

Here, Plaintiff is asking the Court to take notice of the State Court Action against Defendant. (*See* ECF No. 54). Defendant does not object to the Court taking judicial notice of the State Court Action against it.

Therefore, the undersigned will recommend granting Plaintiff's request for judicial notice of the State Court Action.

## V. MOTION FOR CLASS CERTIFICATION

### A. Plaintiff's Motion

Plaintiff seeks certification of the following proposed classes:

- **Underpaid PTO Class/Sick Pay Class:** "All current and former non-exempt California employees of UHSJ who were eligible for and used PTO/PTOU during a workweek when he/she also earned a bonus pursuant to Bonus Policy FN0040 between July 17, 2018 and the date of certification (the 'Underpaid PTO Class')". (ECF No. 6-1 at 6).

- **Former Employee Sub-Class:** "All members of the Underpaid PTO Class whose employment ended at any time between July 17, 2019 and the date of certification (the 'Former Employee Sub-Class')." (*Id.*).

### B. Defendant's Opposition

On December 23, 2024, Defendant filed its opposition to Plaintiff's motion for class certification. (ECF No. 50). Defendant argues that (1) proceeding on a class basis in this case is not superior to alternative means, such as the ongoing state court litigation in the *Moreno* case; (2) Plaintiff is not an adequate class representative because she does not know enough about the circumstances of other members of the class; and (3) certification of Plaintiff's proposed classes has the potential to create injustice because (a) there is already a consolidated state court case

pending against Defendant, and (b) certifying this case and does not provide a substantial benefit to the class.  (*Id.* at 8-14).

**C. Plaintiff's Reply**

Plaintiff's reply points out that Defendant did not dispute the numerosity, commonality, or typicality requirements.  (ECF No. 53 at 4).   Plaintiff argues that she is an adequate representative and does not need personal knowledge of how other class members were treated. (*Id.* at 7).  Plaintiff also argues that Defendant's argument against superiority is founded on the erroneous assertions that a class action is not considered the superior method of adjudication for wage and hour claims and that proceeding as a class action in this case is unnecessary and potentially unjust because of the state court action.  (*Id.* at 10).  Plaintiff states that federal courts routinely recognize the superiority of class actions in wage and hour cases.  (*Id.*).  Plaintiff also states that the pending related state court litigation does not contain "sick leave" or "PTO" claims and remains uncertified after more than three years.  (*Id.*).

**VI. LEGAL STANDARDS**

**A. Class Actions Generally**

For class certification, the proposed class must satisfy the four threshold requirements of Federal Rule of Civil Procedure 23(a):

> (1) [T]he class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a)(1)-(4).  "Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011).  "The Rule's four requirements—numerosity, commonality, typicality, and adequate representation—effectively limit the class claims to those fairly encompassed by the named plaintiff's claims."  *Id.* at 349 (internal quotation marks and citations omitted).

In addition to the requirements of Rule 23(a), "the proposed class must satisfy at least one of the requirements listed in Rule 23(b)."  *Dukes*, 564 U.S. at 345.  Pursuant to Rule 23(b)(3), a court may certify a class only if it determines that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class

action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

"A party seeking class certification must affirmatively demonstrate his compliance with [Rule 23]." *Dukes*, 564 U.S. at 350. The Supreme Court has recognized that "sometimes it may be necessary for the court to probe behind the pleadings before coming to rest in the certification question." *Id.* (quoting *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 160 (1982)). Rule 23(b)(3) only "requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 568 U.S. 455, 459 (2013) (emphasis in original); *see also Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 665 (9th Cir. 2022) ("[P]laintiffs must prove the facts necessary to carry the burden of establishing that the prerequisites of Rule 23(a) are satisfied by a preponderance of the evidence.") (citing cases). However, "a district court *must* consider the merits if they overlap with the Rule 23(a) requirements." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011).

## B. Rule 23(a) Requirements

### 1. Numerosity

A proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "The numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." *General Telephone Co. of the Northwest v. Equal Employment Opportunity Comm'n*, 446 U.S. 318, 330 (1980) (noting that a class with only 15 members "would be too small to meet the numerosity requirement"). Courts in the Ninth Circuit have found the requirement satisfied when the class is composed of as few as thirty-nine members. *See Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 474 (E.D. Cal. 2010) (*citing Jordan v. L.A. County*, 669 F.2d 1311, 1319 (9th Cir. 1982) (noting that class sizes of thirty-nine, sixty-four, and seventy-one are sufficient to satisfy the numerosity requirement), *vacated on other grounds*, 459 U.S. 810, 103 (1982) (additional citations omitted)).

### 2. Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed.

R. Civ. P. 23(a)(2).  Commonality does not require class members to "have all suffered a violation of the same provision of law."  *Dukes*, 564 U.S. at 350.  A common question "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id.*  "By contrast, an individual question is one where members of a proposed class will need to present evidence that varies from member to member."  *Olean*, 31 F.4th at 663 (*citing Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)).  "Commonality is necessarily established where there is a class-wide policy to which all class members are subjected."  *Owino v. CoreCivic, Inc.*, 60 F.4th 437, 444 (9th Cir. 2022) (*citing Parsons v. Ryan*, 754 F.3d 657, 678 (9th Cir. 2014)).  Further, "[e]ven a single common question of law or fact that resolves a central issue will be sufficient to satisfy this mandatory requirement for all class actions."  *Castillo v. Bank of Am., NA*, 980 F.3d 723, 728 (9th Cir. 2020) (*citing Dukes*, 564 U.S. at 350).  "The commonality preconditions of Rule 23(a)(2) are less rigorous than the companion requirements of Rule 23(b)(3)."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998), *overruled on other grounds by Dukes*, 564 U.S. at 338.  "Indeed, Rule 23(a)(2) has been construed permissively."  *Id.*

### 3. Typicality

"[T]he claims or defenses of the representative parties [must be] typical of the claims and defenses of the class." Fed. R. Civ. P. 23(a)(3). They need not be clones; rather, all that is required is that the claims or defenses be "reasonably co-extensive." *Hanlon*, 150 F.3d at 1020 (noting that this standard is a "permissive" one and requires only that the claims of the class representatives be "reasonably co-extensive with those of absent class members; they need not be substantially identical."). Typicality is satisfied if the representative's claims arise from the same course of conduct as the class claims and are based on the same legal theory. *See, e.g., Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1463 (9th Cir. 1995) (claims are typical where named plaintiffs have the same claims as other members of the class and are not subject to unique defenses). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497,

508 (9th Cir. 1992), *superseded by statute on other grounds as stated in Aquilina v. Certain Underwriters at Lloyd's London*, No. 1:18-CV-00496-ACK-KJM, 2021 WL 3611027, at *6 (D. Haw. Aug. 13, 2021) (citation omitted).

### 4. Adequacy of Representation

Before the Court can certify a class, the Court must be satisfied that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "[A] class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997) (citations omitted) (alteration in original). "The proper resolution of this issue requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Financial Corp. Securities Litigation*, 213 F.3d 454, 462 (9th Cir. 2000), *as amended* (June 19, 2000) (citations omitted).

### C. Rule 23(b) Requirements

Plaintiff seeks certification under Rule 23(b)(3), which requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### 1. Predominance

First, questions of law or fact common to class members must predominate over any questions affecting only individual members. Fed. R. Civ. P. 23(b)(3). This "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon*, 150 F.3d at 1022 (quoting *Amchem*, 521 U.S. at 623) (internal quotation marks omitted). "This analysis presumes that the existence of common issues of fact or law have been established pursuant to Rule 23(a)(2); thus, the presence of commonality alone is not sufficient to fulfill Rule 23(b)(3)." *Id.* "In contrast to Rule 23(a)(2), Rule 23(b)(3) focuses on the relationship between the common and individual issues." *Id.* As set forth by the Supreme Court,

The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues. When one or more of the central issues in the action

are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.

*Tyson Foods*, 577 U.S. at 453 (internal citations and quotation marks omitted).

### 2. Superiority

Rule 23(b)(3) provides that, aside from predominance, a court must find that a "class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The rule lists four metrics pertinent to superiority:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

*Id.* The Ninth Circuit has recognized a "well-settled presumption that courts should not refuse to certify a class merely on the basis of manageability concerns," but rather should look to "manageability as one component of the superiority inquiry." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128 (9th Cir. 2017) (quoting *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 663 (7th Cir. 2015)) (internal quotation marks omitted).

## IV. CLASS CERTIFICATION ANALYSIS

### A. Summary of the Parties' Positions

#### 1. Plaintiff's Motion for Class Certification

Plaintiff argues that her motion for class certification should be granted because the Underpaid PTO Class and Former Employee Sub-class meet all the requirements under Rule 23(a)(1)-(4) and 23(b)(3). (ECF No. 46 at 2).

Plaintiff attaches a memorandum to support her motion. (ECF No. 46-1). Plaintiff's memorandum defines the Underpaid PTO Class and Former Employee Sub-Classes as:

All current and former non-exempt California employees of UHSJ who were eligible for and used PTO/PTOU during a workweek when he/she also earned a bonus pursuant to Bonus Policy FN0040 between July 17, 2018 and the date of certification (the "Underpaid PTO Class"); and

All members of the Underpaid PTO Class whose employment ended at any time between July 17, 2019 and the date of certification (the "Former Employee Sub-Class").

(*Id.* at 6 (footnote omitted)). Plaintiff asserts that "[t]he Underpaid PTO Class consists of well over 1,000 individuals and asserts a single claim for underpayment of redeemed PTO/PTOU, which arises out of UHSJ's admittedly common practice of not including a particular quarterly incentive bonus (the 'FN0400 Bonus') when calculating the rate employees are compensated for redeemed PTO." (*Id.* (emphasis omitted)). Plaintiff further asserts that the Former Employee Sub-class "asserts a lone derivative cause of action for waiting time penalties because of the underpaid redeemed PTO during employment." (*Id.*).

Plaintiff alleges as follows: "UHSJ had one (1) overarching written bonus policy, which it dubbed 'FN0040-Bonus Policy', that applied to all members of the Underpaid PTO Class from at least July 27, 2017 forward." (*Id.* at 7). "Plaintiff learned of UHSJ's quarterly bonus program shortly after she was hired—it was explained that anytime a certain number of encounters was met companywide, she (and "everyone") would qualify for a bonus." (*Id.* at 7-8). "Through the entire proposed Class Period, from July 17, 2018 forward, UHSJ has had uniform written policies applicable to all Underpaid PTO Class members that govern how the Company satisfies its obligations under California's Healthy Workplaces, Healthy Families Act (Labor Code § 245, et seq.). In particular, UHSJ provides designated 'Paid Sick Leave' for per diem and non-benefit-earning part-time employees." (*Id.* at 8). "The PTO program provides employees a consolidated and unsegregated 'bank' of time off that can be used for 'vacation, sick leave, medical appointments, family illness or any leave of absence.'" (*Id.*).

Plaintiff states that "[d]uring the proposed Class Period, UHSJ always paid redeemed PTO—regardless of the reason the PTO is used—at the employee's base hourly rate of pay." (*Id.* at 9). "At no point were FN0400 Bonus earnings factored into the rate at which UHSJ paid its employees for redeemed PTO." (*Id.*). Additionally, "UHSJ never made any retroactive attempt to incorporate FN0400 Bonuses into redeemed PTO at the time Mitchell, or any other California employee, separated from employment and UHSJ was calculating the amount to pay for his/her final wages." (*Id.*). Plaintiff's position is that because the bonuses were non-discretionary and applied uniformly, they should have been included in her compensation. (*Id.* at 10). Plaintiff

asserts that "[s]ince UHSJ never went back, at the time it was calculating Plaintiff's final wages, and retroactively increased the amount it paid Plaintiff for PTO redeemed during employment, the underpaid PTO remained outstanding at the time of separation—it still remains outstanding today." (*Id.* at 10). Plaintiff further asserts that "[t]he failure to ever pay redeemed PTO at a rate that included FN0400 Bonuses during employment, coupled with the failure to retroactively pay such amounts at Plaintiff's separation underscores the waiting time penalty claim on behalf of the Former Employee Sub-Class." (*Id.*).

In her analysis section, Plaintiff argues that the Underpaid PTO Class and Former Employee Sub-Class should be certified because all Rule 23 requirements have been met. (*Id.* at 11). First, Plaintiff asserts that the Underpaid PTO Class and Former Employee Sub-Class are sufficiently numerous, and that the numerosity is confirmed by Defendant's discovery responses. (*Id.*).

Second, Plaintiff asserts that commonality is established because the claims of the Underpaid PTO Class and Former Employee Sub-Class present the following common issues:

> (1) whether the bonuses issued under policy FN0040 are non-discretionary and/or otherwise includable in the "regular rate of pay"; (2) whether PTO/PTOU must be paid at the "regular rate of pay" under California law; (3) whether UHSJ's practice of paying PTO/PTOU at the employee's base hourly rate is unlawful; (4) whether Underpaid PTO Class members are entitled to restitutionary relief in the form of underpaid PTO/PTOU wages; and (5) whether UHSJ's failures to pay PTO/PTOU at the "regular rate of pay" were willful under Labor Code section 203.

(*Id.* at 12-13). Third, Plaintiff argues that her claims are typical of Underpaid PTO Class and Former Employee Sub-Class because "her damages are typical of and entirely coextensive with *all* members of the Underpaid PTO Class and the Former Employee Sub-Class and arise *directly* out of UHSJ's common practices outlined in the preceding Section." (*Id.* at 16). Fourth, Plaintiff states that she is an adequate class representative because she and her counsel "(1) will prosecute the action vigorously on behalf of the class, and (2) do not have conflicts of interest with other class members." (*Id.* at 17). Fifth, Plaintiff argues that, although not specifically identified in Rule 23, the proposed classes must be "ascertainable" and, in this case, the proposed class and sub-class are both identifiable and ascertainable. (*Id.* at 18).[4]

---

[4] "While some circuits have adopted an 'ascertainability' prerequisite to certification, the Ninth Circuit has not." *Ahlman v. Barnes*, 445 F. Supp. 3d 671, 682 n.8 (C.D. Cal. 2020) (citing *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124 n.4 (Jan. 3, 2017)). Therefore, the Court determines that it need not

13

Lastly, Plaintiff argues that the Rule 23(b)(3) requirements have also been met. (*Id.* at 19). Plaintiff contends predominance is satisfied because "the primary questions central to resolution of the claims here are common to all Class members." (*Id.* at 20 (emphasis omitted)). Plaintiff further states that these common questions are: (1) "whether the FN0400 Bonuses are includable in the 'regular rate of pay'"; (2) "whether UHSJ was required to pay redeemed PTO at the regular rate of pay"; and (3) "whether the failure to pay redeemed PTO at the regular rate of pay during employment resulted in willful failure to pay all wages due at the time of separation are the fundamental common questions underlying this litigation and the class-wide claims asserted." (*Id.*).

As to superiority, Plaintiff asserts that a class action is the superior method for adjudication because the claims are based on uniform practices that can be efficiently litigated on a class-wide basis, and "no single class member can reasonably be said to have suffered substantially different damages or to have an emotional stake in the litigation that would motivate a desire to individually control prosecution of a separate action." (*Id.* at 23). Plaintiff also contends that a class-wide trial would be manageable because, "the parties can file cross-motions for summary judgment to decide dispositive legal issues pertaining to Defendant's liability." (*Id.* at 25).

### 2. Defendant's Opposition

Defendant's Opposition states that "[d]uring her employment at UHC Plaintiff only worked in the UHC Administration buildings in the Finance Department. . . . [c]onsequently, Plaintiff would not have knowledge, information, or awareness of how any of the clinic sites operated and/or how the employees at those 35+ sites were eligible, entitled or compensated for bonuses." (ECF No. 50 at 6 (emphasis omitted)). "Likewise, Plaintiff did not take the opportunity to communicate or interact with UHC personnel at any of the numerous UHC clinic sites with regard to bonuses, regular rate issues, or any other issue at stake in this litigation." (*Id.* at 6-7).

Defendant further states that "[Plaintiff] did not have any job responsibilities that were in any way related to or connected with any UHC bonus program or policy, nor would she have any

---

address whether the class is ascertainable.

access to information about any bonus program other than any memo or documents published to all employees." (*Id.* at 7). "Further, Plaintiff's job duties did not include any work connected with payroll information, timekeeping or reporting issues, interfacing with human resources or payroll personnel, discussions of personnel policies or wage and hour policies, overtime, sick pay, payroll calculations, overtime calculations or any wage and hour issues." (*Id.*). Defendant also states that "[Plaintiff] left in 2022 so would have no information about these issues for the employees in the 13 sites that have since opened and the employees hired to work at those sites." (*Id.* at 8). "She also admits having not ever spoken to any UHC employee regarding how they were used or paid their sick pay, or how their sick pay was calculated."

Defendant states that there are three other pending class actions against United Health Centers of the San Joaquin Valley:  (1) *Lupita Moreno v. United Health Centers of the San Joaquin Valley,* Fresno County Superior Court No. 22CECG01601.3; (2) *Mirella Torres v. United Health Centers of the San Joaquin Valley*, Fresno County Superior Court No. 22CECG01760.4; (3) *Adriana Mora v. United Health Centers of the San Joaquin Valley*, Fresno County Superior Court No. 23CECG00030. (*Id.* at 9). Defendant states that "[t]hese cases have now been consolidated with the *Moreno* action as the lead case." (*Id.* at 10). Defendant further states that because the class periods in all three cases are larger, Plaintiff's case should be consolidated with the *Moreno* case. (*Id.*).

Defendant also specifies that "[b]oth *Moreno* and *Mora* have the same cause of action [as the Underpaid PTO Class.]"  Specifically, those cases state:

> Defendants' conduct, as alleged herein, has been, and continues to be, unfair, unlawful, and harmful to Plaintiff, other Class members, and to the general public. Plaintiff seeks to enforce important rights affecting the public interest within the meaning of Code of Civil Procedure § 1021.5. **Defendants' activities, as alleged herein, are violations of California law, and constitute unlawful business acts and practices in violation of California Business & Professions Code §§ 17200, *et seq.***

(*Id.* at 10 (citing *Moreno* Complaint at 19:23-20:1)). Defendant argues that "the references to proper compensation and other benefits necessarily must include any and all sick pay owed to the employees (as referenced by Plaintiff)." (*Id.*). Regarding the Former Employee Sub-Class, Defendant argues that "[a]ll three state court complaints make

similar claims, actually focusing in detail on the statutes in question, Labor Code §§ 201-203." (*Id.* at 11).

Defendant also makes the following other arguments: (1) in federal courts, a class action is not considered superior to alternative means; (2) Plaintiff is not an adequate representative because she does not know enough about the claims, status, or interests of other members of the class; and (3) certification of Plaintiff's proposed classes has the potential to create injustice because of the ongoing related state court litigation; and (4) certification would not provide a substantial benefit to the class that is not addressed in the ongoing state court litigation. (ECF No. 50).

### 3. Plaintiff's Reply

In reply, Plaintiff points out that Defendant did not dispute the numerosity, commonality, or typicality requirements. (ECF No. 53 at 4). Plaintiff argues that she is an adequate representative and does not need personal knowledge of how other Class Members were treated. (*Id.* at 7). Plaintiff also argues that Defendant's argument against superiority is founded on the erroneous assertions that: (1) a class action is not considered the superior method of adjudication for wage and hour claims, and (2) proceeding as a class action in this case is unnecessary and potentially unjust because of the state court action. (*Id.* at 10). Plaintiff further argues that federal courts routinely recognize the superiority of class actions in wage and hour cases, and that the none of the pending related state court litigation contains "sick leave" or "PTO" claims. Plaintiff also says that those state court cases remain uncertified after more than three years of litigation. (*Id.*).

### B. Rule 23(a) Requirements

#### 1. Numerosity

Plaintiff indicates that there are likely more than 900 members of the Unpaid PTO class based on Defendant's responses to discovery requests. (ECF No. 46-1 at 11; *see also* ECF No. 46-3 at 14; ECF No. 46-3 at 80). Plaintiff also indicates that "[t]he Former Employee Sub-Class is believed to consist of *at least* 1/3 of those individuals" in the Former Employee Sub-Class."[5]

---

[5] In a different section of the brief, Plaintiff indicates that "it is expected at least 300 individuals meet [the] definition" for the Former Employee Sub-Class. (ECF No. 46-1 at 22).

(ECF No. 46-1 at 12). Defendant does not dispute these numbers. (*See* ECF No. 50). These figures are sufficiently numerous that joinder of all class members is impracticable. Accordingly, the Court finds that the numerosity requirement has been met.

### 2. Commonality

Plaintiff states that the common question to be answered among the Underpaid PTO class and Former Employee Sub-Class are as follows:

> (1) whether the bonuses issued under policy FN0040 are non-discretionary and/or otherwise includable in the 'regular rate of pay'; (2) whether PTO/PTOU must be paid at the 'regular rate of pay' under California law; (3) whether UHSJ's practice of paying PTO/PTOU at the employee's base hourly rate is unlawful; (4) whether Underpaid PTO Class members are entitled to restitutionary relief in the form of underpaid PTO/PTOU wages; and (5) whether UHSJ's failures to pay PTO/PTOU at the 'regular rate of pay' were willful under Labor Code section 203.

(ECF No. 46-1 at 12-13).

Plaintiff argues that "[i]t is readily recognized that the question of the discretionary versus nondiscretionary nature of a bonus is a certifiable common question, particularly with respect to a bonus uniformly applied to all class members." (*Id.* at 13 (citations omitted)). Plaintiff states that "[Defendant's] FN0400 Bonus policy [was] the 'only' written bonus policy in place . . . during the relevant period and it applied to 'all employees.'" (*Id.*). Plaintiff argues that because the bonus policy applied a unform method of characterizing and calculating bonuses to all employees, "the central question of whether the FN0400 Bonus is includable in the 'regular rate of pay', or whether UHSJ can satisfy its burden of demonstrating the payments are discretionary or otherwise excludable, is a common one." (*Id.* at 14).

Plaintiff also argues that for the same reason, "determination of whether PTO/PTOU must be paid at the 'regular rate of pay' is also a common question." (*Id.*). Plaintiff further argues that "the lone claim asserted on behalf of the Former Employee Sub-Class is similarly based on a common contention; namely, that UHSJ's failure to include FN0400 Bonuses in the rate class members were paid for redeemed PTO during employment resulted in unpaid wages that remained outstanding at separation and still have not been paid thus entitling separated employees to waiting time penalties." (*Id.* at 15 (emphasis omitted)).

Defendant does not challenge the commonality of these questions. (*See generally* ECF No. 50).

17

Several courts within the Ninth Circuit have found that the discretionary versus non-discretionary nature of bonuses is a certifiable common question of law. *See e.g. Kincaid v. Educ. Credit Mngmt. Corp., Inc.*, No.2:21-cv-00863, 2024 U.S. Dist. LEXIS 59023, at *3 (E.D. Cal. Mar. 29, 2024) (certifying class for "[a]ll members of the Class who received non-discretionary bonuses, commissions, and/or incentives which were not included in the regular rate of pay for purposes of overtime compensation); *see also Chavez v. Lumber Liquidators, Inc.*, No. CV-09-4812-SC, 2012 U.S. Dist. LEXIS 40984, at *6 (N.D. Cal. Mar. 26, 2012) (holding employees show commonality and predominance if their employer had a uniform practice or policy for calculating overtime pay that did not include bonuses or other non-discretionary pay).

Additionally, Labor Code section 246(l)(1)-(2) provides:

(1) Paid sick time for nonexempt employees shall be calculated in the same manner as the regular rate of pay for the workweek in which the employee uses paid sick time, whether or not the employee actually works overtime in that workweek.

(2) Paid sick time for nonexempt employees shall be calculated by dividing the employee's total wages, not including overtime premium pay, by the employee's total hours worked in the full pay periods of the prior 90 days of employment.

Cal. Lab. Code, § 246(l)(1)-(2).

Labor Code section 203(a) provides:

(a) If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.3, 201.5, 201.9, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days. An employee who secretes or absents himself or herself to avoid payment to him or her, or who refuses to receive the payment when fully tendered to him or her, including any penalty then accrued under this section, is not entitled to any benefit under this section for the time during which he or she so avoids payment.

Cal. Lab. Code, § 203(a).

Plaintiff presents several excerpts from depositions with Choua Xiong-Fajardo, Director of Finance for UHSJ, as evidence that Defendant had a practice of paying employees redeemed PTO at their base hourly rate:

Q. Okay. Do you know anywhere within UHC's paid sick leave or PTO policies, is it indicated what rate paid sick leave or PTO is to be paid at?

A. We -- I'm assuming it's in the I don't know where in the employee manual it is,

18

but it is paid at their hourly rate.

Q. When you say at their hourly rate, what does that mean?

A. Whatever that was their current pay.

Q. Like their base hourly rate?

A. Yes, for hourly. And then for exempt, it would be, you know, it would just be their salary.

Q. The conversion of their salary into an hourly rate?

A. Correct.

Q. The hourly equivalent based on the salary?

A. Uh-huh.

Q. Yes?

A. Yes. Correct.

(*Id.* at 83). Plaintiff also submits the following additional excerpt from the same deposition with Xiong-Fajardo:

Q. Okay. Is it your understanding that PTO and paid sick leave are always paid out at the, for hourly employees, the employee's base hourly rate?

A. Yes.

Q. Do you know, is it calculated any differently, the rate that's it's paid, based on the reason the PTO is used?

A. No, not that I'm aware.

Q. And you oversee payroll to ensure that employees are paid accurately, right?

A. Yes, that's correct.

(*Id.* at 75).

Plaintiff also presents evidence that at no point were FN0400 Bonus earnings factored into the rate UHSJ employees for redeemed PTO:

Q. Are you aware of bonus earnings being, quarterly bonus earnings being factored into the PTO rate, or PTOU rate, paid to any employee at UHC at any time?

19

A. No.

(*Id*. at 78).

Plaintiff's evidence indicates that Defendant has a uniform policy in place for paying hourly employees PTO at their base hourly rate. Plaintiff's evidence also indicates that bonuses were not factored into the employees' PTO or PTOU rates. Defendant does not dispute that these practices were in place during the relevant period, nor does Defendant dispute that Plaintiff can establish commonality as to the Underpaid PTO Class or Former Employee Sub-class.

Accordingly, the Court concludes that commonality has been established for this class.

### 3. Typicality

Plaintiff argues that (1) her "claims and the nature of her damages are typical of and entirely coextensive with all members of the Underpaid PTO Class and the Former Employee Sub-Class and arise directly out of UHSJ's common practices outlined in the preceding section"; (2) "like all Underpaid PTO Class members, earned FN0400 Bonuses during periods when she redeemed PTO and was compensated for that PTO time at only her base hourly rate;" (3) "Plaintiff no longer works for UHSJ, she possesses the *identical* claim for waiting time penalties founded on the failure to properly pay redeemed PTO during employment available to other Former Employee Sub-Class members." (ECF No. 46-1 at 16 (emphasis omitted)). Defendant does not contest typicality of the class and sub-class claims. (*See generally* ECF No. 50).

As evidence of typicality, Plaintiff provides the following Deposition testimony:
Q. You see that that is a wage statement relating to the pay period, March 1st, 2022, to March 15th, 2022, for Ms. Mitchell?

A. Yes. Correct.

Q. And you see that she used PTOU here, right?

A. Uh-huh.

Q. Yes?

A. Yes. Correct. Sorry.

Q. That's okay. And it looks like the PTOU was paid at $24.93, right?

A. Yes, that's correct.

Q. Okay. And that's the same amount that was paid for Ms. Mitchell's hourly – I'm sorry, earnings designated as, quote, "regular," right?

A. Yes, that's correct.

Q. Okay. And it looks like, under her name, where it says "hourly, 24.93," that is her base hourly rate, correct?

A. Yes, that's correct.

Q. And this PTOU that was paid, it doesn't include any amounts that Ms. Mitchell may have earned during this period for any bonuses, right?

A. Yes, that's correct.

Q. And just to – do you know if this PTOU that was paid to Ms. Mitchell for this period of time on UHC-Class 000959, do you know what that PTOU was used for?

A. From the top of my head, no. I'm assuming she called in sick.

Q. Okay. And that could be confirmed by looking at her time records and the notes?

A. Yeah, if there was any notes.

Q. Okay.

A. This just tells me it's unscheduled. She might not be sick, but she could have had an emergency or something.

Q. Okay. Well, let's look at Exhibit 6, for that time period, real quick.

. . .

Q. It looks like March 11th and March 15th both indicate PTOU being used, and the notes reflect that they were for "sick," right?

A. Yes. Correct.

. . .

Q. Okay. And again, you told me this already, but the bonus earnings Ms. Mitchell had was in no way factored into the rate that was she paid for that PTOU that was redeemed, right?

A. Yes, that's correct.

Q. Are you aware of bonus earnings being, quarterly bonus earnings being factored into the PTO rate, or PTOU rate, paid to any employee at UHC at any time?

A. No.

(ECF No. 46-3 at 75-78).

As the Ninth Circuit has explained, "[t]he test for typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Jones v. Shalala*, 64 F.3d 510, 514 (9th Cir. 1995) (citing *Hanon*, 976 F.2d at 508). The claims of the Underpaid PTO Class stem from Defendant's alleged underpayment of sick pay. Plaintiff, a former non-exempt employee of Defendant's staff accountant's office, has offered evidence establishing the existence of this practice, which applied to all Defendant's employees—including non-exempt employees. As a former non-exempt employee, Plaintiff would have been subject to the same policies.

Defendant's opposition offers no arguments against typicality. Specifically, Defendant's opposition does not dispute that Plaintiff was subject to these policies.

As Plaintiff has presented evidence that she was subject to the same policy resulting in the underpayment of sick pay wages, the Court concludes that Plaintiff's claims are typical of those of the Underpaid PTO Class and Former Employee Sub-Class.

### 4. Adequacy of Representation

As an initial matter, Defendant does not challenge the adequacy of Plaintiff's counsel. The declarations provided by Plaintiff's counsel indicate that there are no conflicts of interest preventing Mitchell's counsel from representing her and the other members of the proposed class. (ECF No. 50 at 17; ECF No. 46-3 at 5). The named counsel has substantial experience in employment class, collective and representative actions and both have and are willing to dedicate the necessary effort and resources to effectively represent the Class. (ECF No. 46-1 at 18; ECF No. 46-3 at 5-10). The Court is satisfied that Plaintiff's counsel is adequate.

As to Plaintiff's adequacy as a class representative, Plaintiff argues that she (1) has no conflicts of interest; (2) "[a]lthough Plaintiff also had a separate lawsuit against UHSJ that asserted claims arising under California's Fair Employment & Housing Act ("FEHA"), such does not create a conflict or negatively impact her adequacy"; (3) "Plaintiff's commitment to the

Classes is underscored by the fact she continues to vigorously pursue the class claims *after* she fully resolved her separate individual FEHA matter"; (4) "Plaintiff has further demonstrated her commitment to the Class by actively participating throughout the lawsuit, including submitting herself to deposition in furtherance of the Class' interests;" (5) "She has functional knowledge and familiarity with the legal and factual bases of the claims and understands her duties and obligations in serving as class representative."  (ECF No. 46-1 at 17-18).

Defendant argues that Plaintiff is not an adequate representative because:

(1) She "knows remarkably little about the claims, status or interests in the other class members. During her employment at UHC Plaintiff *only* worked in the UHC Administration buildings in the Finance Department and not at the 22 clinic sites that existed at the time of her termination or the 13 sites opened since."  (ECF No. 50 at 13).

(2) Plaintiff "simply does not have knowledge, information, or awareness of how any of the clinic sites operated and/or how the employees at those 35+ sites were eligible, entitled or compensated for bonuses."  (*Id.*).

(3) "Plaintiff did not take the opportunity to communicate or interact with UHC personnel at any of the numerous UHC clinic sites with regard to bonuses, regular rate issues, or any other issue at stake in this litigation."  (*Id.*).

(4) "Further, Plaintiff's job duties did not include any work connected with payroll information, timekeeping or reporting issues, interfacing with human resources or payroll personnel, discussions of personnel policies or wage and hour policies, overtime, sick pay, payroll calculations, overtime calculations or any wage and hour issues. . . . Instead, she focused on daily deposits, received and paid invoices and, later, employee expense reimbursements.  (*Id.*).

(5) "Plaintiff also did not have access or information regarding bonus calculations, entitlement to bonuses, bonus eligibility, the definition of any terms in the bonus programs or policies, discretionary status of bonuses, or any other bonus features except as published and available to all UHC employees."  (*Id.* at 14).

(6) "To the extent Plaintiff was paid or entitled to any bonuses based on any bonus

program or policy, her position fell into the category of 'Administration.' . . . As a
result, she had no access or information as to how the Administration category or any
other categorization would have been defined for purposes or bonus eligibility,
entitlement, calculation or payment, except as published to all employees." (*Id.*).

(7) "Plaintiff concedes she does not having any personal knowledge about how regular
rate issues impacted any other employee besides her." (*Id.*).

(8) "She also admits having *never* spoken to any UHC employee regarding how they were
used or paid their sick pay, or how their sick pay was calculated." (*Id.*).

(9) "Plaintiff admits she did not receive bonuses during the 'two years during COVID'
and further admits never having been guaranteed a bonus at UHC, and was never
made to believe that bonuses were a regular addition to her compensation." (ECF No.
50 at 15).

In her reply, Plaintiff argues that her lack of personal knowledge of other class members'
experiences does not render her an inadequate representative because "there is no requirement
that a named plaintiff possess personal knowledge of the experiences of other class members in
order to maintain a class action." (ECF No. 53 at 7). Instead, Plaintiff argues that "the function of
the adequacy requirement is simply to protect the due process interests of absent class members
by ensuring there are no conflicts and the named plaintiff is capable of (and willing to) pursuing
and protecting their rights." (*Id.*). Plaintiff also argues that she has "affirmatively demonstrated
she has no conflicts with [the other class members] and has a functional knowledge of the nature
of the claims and her role as class representative; [which] is all that is necessary to underscore
certification." (*Id.*). Plaintiff also points out that "Defendant cites absolutely no legal authority
suggesting a class representative must have personal knowledge of how other individuals were
treated in order to be adequate. This is because no such requirement exists." (*Id.*).

After consideration, the Court is satisfied that Plaintiff is an adequate representative for
the Underpaid PTO Class and Former Employee Sub-Class. As to the first inquiry under *Mego*
regarding conflicts of interest, both Plaintiff and her counsel represent that they have no conflicts
of interest in pursuing this litigation. (ECF No. 46-1 at 17; ECF No. 46-3 at 5). In her
declaration, Plaintiff also represents that she understands and agrees to represent the interests of

the other Class Members who, like her, earned quarterly bonuses during periods when PTO was redeemed but were only paid PTO at the base hourly rate, and Defendant does not contend otherwise. (ECF No. 46-2 at 3). As to the second question under *Mego*, Plaintiff has also declared that she is "committed to actively pursu[ing] the claims" on behalf of the Underpaid PTO Class and Former Employee Sub-Class. (*Id.*). Defendant does not contest these assertions. (*See generally* ECF No. 50).

As to Plaintiff's previous claims against Defendant, Plaintiff states that she "specifically did not waive any of the claims pending in this class action when [she] settled [her] individual wrongful termination/discrimination claims." (*Id.*). Defendant also does not contest this assertion. (*See generally* ECF No. 50).

Additionally, the Court agrees that Plaintiff is not required to have personal knowledge of the circumstances and experiences of other class members. As the Supreme Court has stated, Rule 23(a)(4) "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods. v. Windsor*, 521 U.S. 591, 597 (1997). Nothing about the rule addresses the knowledge of the Plaintiff. Furthermore, other courts in this circuit have also found that a plaintiff "need not have personal knowledge of other class members' experiences, and her lack of such knowledge does not create a conflict or raise doubts about her ability to vigorously pursue the action on behalf of the class." *Pace v. PetSmart Inc.*, No. Case No. SACV 13-00500 DOC (RNBx), 2014 U.S. Dist. LEXIS 77727, at *20 (C.D. Cal. June 3, 2014); *Delagarza v. Tesoro Ref. & Mktg. Co.*, C-09-5803 EMC, 2011 U.S. Dist. LEXIS 101127, at *28 (N.D. Cal. Sept. 8, 2011) ("That class representatives do not have personal knowledge of the experiences of each of their fellow class members says nothing about the rule's chief concern.").

Defendant cites no case law to support its assertion that Plaintiff needed to have knowledge of the experience of other members of the class. The Court will not impose such a requirement for Rule 23(a)(4) where one does not exist.

Accordingly, the Court finds that Plaintiff and Plaintiff's counsel are adequate representatives for the Underpaid PTO Class and Former Employee Sub-Class.

\\\

\\\

### C. Rule 23(b) Requirements

As the Court has concluded that Plaintiff has satisfied all the requirements under Rule 23(a) for the Underpaid PTO Class, the Court now examines the requirements under Rule 23(b)(3).

#### 1. Predominance

As to predominance, Plaintiff first states that her "position is that the FN0400 Bonuses are includable in the 'regular rate of pay' and that compliance with the HWHFA required UHSJ to pay all redeemed PTO at the 'regular rate of pay' since UHSJ does not distinguish between the reasons PTO is being redeemed and expressly intended its PTO plan to comply with 'PSL state law[.]'" (ECF No. 46-1 at 20-21). Plaintiff essentially argues that because these policies were applied to all class members, the requirement for predominance has been met. (*Id.* at 21). Plaintiff also states that:

> there is no dispute that 1) FN0400 Bonuses were afforded to "all employees" during the Class Period pursuant to the same written policies, 2) that PTO was provided to all employees in the same way pursuant to written policies that applied company-wide, 3) that PTO was (and is) *always* paid at the base hourly rate and never included FN0400 Bonus amounts, and 4) that UHSJ never went back and retroactively incorporated FN0400 Bonus amounts into PTO and provided employees "back wages."

(ECF No. 46-1 at 21). Defendant does not dispute that Plaintiff has satisfied the predominance requirement as to the Underpaid PTO Class.

Plaintiff has established that during the relevant period, Defendant always paid employees PTO at a base hourly rate. (ECF 46-1 at 75, 83). Plaintiff also submits evidence to show that there was one policy in place. (*Id.* at 46).

As a uniform policy was applied to all members of the Underpaid PTO Class and Former Employee Sub-Class, the Court finds that the Class is sufficiently cohesive, even if an individual member's damages will vary depending on the amount of premium pay they are owed.

Accordingly, the Court finds that predominance has been established for the Underpaid PTO Class and Former Employee Sub-Class.

#### 2. Superiority

Plaintiff argues that a class action is the superior method for resolving the claims of the

Underpaid PTO Class and Former Employee Sub-Class because:

> [T]he Class' claims are based upon application of UHSJ's uniform policies through admittedly common practices that pervaded throughout the Class Period. Accordingly, no single class member can reasonably be said to have suffered substantially different damages or to have an emotional stake in the litigation that would motivate a desire to individually control prosecution of a separate action. Resolving the common liability issues here will undoubtedly foster judicial economy by efficiently adjudicating liability for more than 900 individuals at once. See *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,* 244 F.3d 1152, 1163-64 (9th Cir. 2001).

(ECF No. 46-1 at 23).

Defendant argues that certification is proper where the class action proceeding is superior to alternate means, and that "in federal courts a class action is not generally considered 'the superior method of adjudication of wage and hour claims.'" (*Id.* at 12 (citing *Jiminez v. Domino's Pizza, Inc*., 238 F.R.D. 241, 253 (C.D. Cal. 2006)). Defendant further argues that "[t]here is no substantial benefit here given that there is already a consolidated case in state court that resolves all potential class issues for all employees, including Plaintiff's claims. Here, the parties in the state and federal actions are substantially the same and the issues are virtually identical." (ECF No. 50 at 13). Defendant also argues that "[t]he Order in Which the Courts Obtained Jurisdiction Suggests Lack of Superiority and Substantial Benefit" because the related state court cases against Defendant were filed first.[6] (*Id.* at 17). Additionally, certifying a federal class action is not superior because California law predominates the litigation. (*Id.* at 18).

> Plaintiff replies that:
> Defendant's sole argument against superiority is founded on the erroneous assertion that "a class action is not considered 'the superior method of adjudication of wage and hour claims'" and the illogical contention proceeding as a class action in this case is unnecessary and potentially unjust because of the State Court Action, **in which certification has neither been sought nor attained in the three years the matters have been pending** and no claims arising out of allegedly underpaid PTO are factually articulated. Defendant's position is untenable, focuses on irrelevant considerations, and is nothing more than a transparent attempt to distract this Court and avoid facing potential liability on a class-wide scale.

---

[6] During the hearing on the motion, Defendant clarified that this argument was not based in the First to File Doctrine or the Colorado River Doctrine.

(ECF No. 53 at 10 (emphasis in original) (footnote omitted)).

The Court notes that superiority generally refers to whether class is the superior method rather than individual suits. Superiority does not refer to a case being superior to other cases.

Moreover, there is no law directing a federal court to deny class certification in lieu of other state cases, where the federal case is not otherwise stayed or dismissed in light of those state court cases. The case Defendant relies on to make the argument that this litigation is not superior, does not support its position. In context, *Jiminez*, reads:

> To certify the class, the Court must also find that the class action is superior to other methods of adjudication. *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). "A class action is the superior method for managing litigation if no realistic alternative exists." *Id.* at 1234-35. Here, other alternatives exist. First, each individual plaintiff can file a separate suit, following which consolidation may be appropriate. . . .
>
> Because of manageability of this suit as a class is questionable and because there are viable alternatives, the Court finds that certification under Rule 23(b)(3) is inappropriate.

*Jimenez v. Domino's Pizza*, 238 F.R.D. 241, 253-254 (C.D. Cal. 2006). Nothing in *Jiminez* indicates that state court litigation—or some other administrative alternative—is always superior to federal litigation. Also, as the Court already discussed above, the class size in this case is so numerous, that individual lawsuits would be impractical; therefore, there is not a realistic alternative to a class action in this case.

Moreover, Defendant already previously filed a motion to dismiss based on the argument that the claims in this litigation were redundant because they were already being asserted against UHC in multiple state court actions. (ECF No. 12). On January 26, 2024, Judge Thurston issued an order denying Defendant's motion, finding that at least some claims in this case were uniquely pending here. (ECF No. 37). Therefore, the Court will not deny certification on the basis that there are other pending state court cases against Defendant.

The Court also notes that the consolidated *Moreno* case has not certified the entire class, has no pending motion for class certification, and, on the contrary, appears to be stayed for the time being to allow for settlement discussions.

Accordingly, for the reasons stated above, the Court finds that a class action is the

superior method for fairly and efficiently adjudicating the Underpaid PTO claims of Plaintiff and the proposed class.

In conclusion, the Court finds that Plaintiff has met her burden in satisfying the requirements of Rule 23(a) and Rule 23(b) as to the Underpaid PTO Class. Therefore, the Court recommends that the Underpaid PTO Class be certified.

## V. CONCLUSION AND RECOMMENDATION

Based on the foregoing, IT IS RECOMMENDED that:

1. Plaintiff's request for judicial notice of the State Court Action (ECF No. 54) be GRANTED.

2. Plaintiff's motion for class certification (ECF No. 46) be GRANTED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within thirty (30) days after being served with these findings and recommendations, any party may file written objections with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within thirty (30) days after service of the objections.

The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: __**March 25, 2025**__     _/s/_ _Errin P. Groj_

UNITED STATES MAGISTRATE JUDGE